UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIASCIENCE CORP. dba YEHUDA DIAMOND COMPANY and JOHN DOES NOS. 1-10 | Civil Action No. 08-CV-9751 |
| | Hon. Naomi R. Buchwald |
| Plaintiffs, | |
| | (JURY TRIAL DEMANDED) |
| v. | |
| BLUE NILE, INC. | |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR**
**FALSE ADVERTISING, UNFAIR BUSINESS PRACTICES**

Plaintiffs Diascience Corp. dba Yehuda Diamond Company ("Yehuda") and John Does Nos. 1-10 ("John Does") (collectively, "Plaintiffs"), for their First Amended Complaint against Defendant Blue Nile, Inc. ("Blue Nile") do hereby allege:

## PARTIES

1. Plaintiff Yehuda is a company organized and existing under the laws of the State of New York, having a principal place of business at 590 5th Ave # 8, New York, NY 10036.

2. Plaintiffs John Does are individuals who purchased clarity-enhanced emeralds, rubies, sapphires and/or emerald-, ruby-, sapphire-containing jewelry from Blue Nile through Blue Nile's Internet website at www.bluenile.com.

3. On information and belief, Defendant Blue Nile is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 705 Fifth Avenue South, Suite 900, Seattle, Washington 98104.

## JURISDICTION AND VENUE

4. This is an action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for deceptive business practices under Section 349 of the N.Y. General Business Law and for false advertising under Section 350 of the N.Y. General Business Law. This Court has subject matter jurisdiction over the Lanham Act claim pursuant to 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367(a). The New York state claims asserted herein is so related to the Lanham Act claim as to form part of the same case or controversy.

5. On information and belief, this Court has personal jurisdiction over Defendant Blue Nile, in that Blue Nile has established minimum contacts with the forum. On information and belief, Defendant Blue Nile transacts business, as that term is construed under N.Y. C.P.L.R. §§ 301 and 302(a)(1), in the State of New York, including in this judicial district. On information and belief, Defendant Blue Nile offers for sale or has offered for sale, or sells or has sold, gemstones, including diamonds and emeralds (as well as jewelry including diamonds and emeralds) in a manner that violates Section 43(a) of the Lanham Act and Sections 349 and 350 of the N.Y. General Business Law, and harms Plaintiff Yehuda.

6. On information and belief, Defendant Blue Nile transacts business in this judicial district, including offering for sale or selling gemstones, including diamonds,

emeralds, rubies and sapphires (as well as jewelry including diamonds, emeralds, rubies and sapphires), in the State of New York, including in this judicial district. Venue with respect to Blue Nile is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS

## YEHUDA

7. Plaintiff Yehuda is the pioneer and market leader in the field of online sales of clarity-enhanced diamonds and diamond jewelry, using a proprietary process for clarity enhancing diamonds.

8. Through its website, www.yehuda.com, Yehuda offers for sale natural, clarity-enhanced diamonds at a reduced price when compared to natural, non-enhanced diamonds of the same or similar clarity, cut, color and carat weight. Yehuda is able to offer its clarity-enhanced diamonds at comparatively reduced prices because of Yehuda's proprietary clarity-enhancement process.

9. Yehuda's proprietary clarity-enhancement process enables Yehuda to optically mask small imperfections in a diamond by inserting a microscopic amount of material into the part of the diamond that contains the imperfection (called a "feather"). The inserted material has the same optical properties as the diamond itself. As a result, light passing through a Yehuda clarity-enhanced diamond passes through the natural feather without alteration: the beam of light "thinks" it's still traveling through the same material (diamond) and continues its original course.

10. Yehuda's website provides clear and complete disclosure to a potential customer of precisely what a Yehuda clarity-enhanced diamond is, how to care for it, the permanence of the Yehuda clarity-enhancement process, and why Yehuda's clarity-

enhanced diamonds cost less. The website includes conspicuous and repeated references to the fact that the diamonds there offered for sale are clarity-enhanced. Yehuda's website also includes a full explanation of Yehuda's clarity enhancement process, including links on Yehuda's home page to "About Clarity Enhancement" and "What is a Clarity Enhanced Diamond?" A printout of the home page of Yehuda's website is annexed hereto as Exhibit 1. A printout of the process page of Yehuda's website, http://www.yehuda.com/process.asp, is annexed hereto as Exhibit 2.

11. Yehuda's website also includes a "Frequently Asked Questions" page, which provides answers to various questions, including: i) Are Yehuda diamonds real diamonds?, ii) How do you enhance the clarity of a diamond?, iii) Will anybody other than a jeweler be able to tell that my diamond is clarity enhanced?, iv) Will the enhancement last forever?, v) Are any other natural gemstones enhanced?, vi) What happens if the diamond comes into contact with boiling acids or open flames?, vii) How can you tell if a diamond has been clarity enhanced?, viii) Is the value of a Yehuda Diamond going to decrease over time?, ix) Are Yehuda Diamonds certified?, and x) What is your return/refund policy? A printout of the "Frequently Asked Questions" page of Yehuda's website, http://www.yehuda.com/faq.asp, is annexed hereto as Exhibit 3 .

12. Yehuda's website conspicuously advises consumers that Yehuda's clarity-enhancement process is permanent under normal conditions of wear and tear. Yehuda's website also conspicuously advises consumers of cleaning methods to employ for the clarity-enhanced diamond, as well as cleaning methods to avoid. As stated on Yehuda's website, a Yehuda clarity-enhanced diamond does not require any special care. A

printout of the "Care" page of Yehuda's website, http://www.yehuda.com/caring.asp, is annexed hereto as Exhibit 4.

13. All of Yehuda's clarity-enhanced diamonds come with a lifetime guarantee, conspicuously set forth on Yehuda's website:

> **The Yehuda Diamond Lifetime Guarantee**
>
> Your Yehuda Diamond is a natural diamond from deep in the heart of the earth which has been technologically enhanced to become as brilliant, clear and beautiful as modern science can make it. The only things likely to compromise the integrity of your diamond's enhancement are the flame of a torch or boiling acids and bases. In the unlikely event your Yehuda diamond should lose its enhancement, Yehuda will gladly restore the enhancement of your diamond at no charge.
>
> No questions asked.
>
> With each diamond sold, Yehuda provides a unique business card-sized CD, which when played on a standard PC, describes the Lifetime Guarantee.
>
> Be sure you receive the Yehuda Lifetime Guarantee CD with every purchase of a Yehuda Clarity-Enhanced Diamond.
>
> The lifetime guarantee safeguards your purchase and ensures that you have purchased a genuine Yehuda Diamond, not an inferior imitation.

(See the "Guarantee" page of Yehuda's website, http://www.yehuda.com/guarantee.asp, a printout of which is annexed hereto as Exhibit 5).

14. It is important to understand that Yehuda does not sell its clarity-enhanced diamonds directly to consumers, via its website. Rather, as set forth on the website, a potential customer is invited to "See The Diamond Before You Pay," and "Browse Online, Buy In Person":

> Select any two clarity enhanced loose diamonds or pieces of finished diamond jewelry from our site and complete an online request. You will then receive an email with the contact information of the authorized Yehuda jeweler in your area. Give them a call and schedule an appointment. When we receive notice from the jeweler that an appointment has been scheduled, we will ship the exact diamonds you requested. Then on the day of your appointment, you can drop in to your local jewelry store and see the diamond face-to-face, touch it, inspect it with a jeweler's loupe and compare it to other more expensive non-enhanced diamonds.
>
> If you decide to buy one of the diamonds we sent, you will pay the low internet price you see online, but get a knowledgable [sic] local jeweler's service to answer questions, mount the diamond, size the ring and complete your purchase.

(Yehuda homepage, Exhibit 1).

15. Yehuda's homepage includes a link to "Learn more about how Yehuda.com works," which clearly explains to consumers that they are able to view and handle the Yehuda clarity-enhanced diamonds they have selected, before purchase, with "[n]o obligation, no pressure, no hidden charges." A printout of Yehuda's webpage, http://www.yehuda.com/nocredit.asp, is annexed hereto as Exhibit 6.

**BLUE NILE**

16. On information and belief, defendant Blue Nile sells gemstones, including diamonds, sapphires, rubies and emeralds (and diamond, sapphire, ruby and emerald containing jewelry), via its Internet website, www.bluenile.com. A printout of the home page of the Blue Nile website is annexed hereto as Exhibit 7.

17. On information and belief the gemstones (including diamonds, sapphires, rubies and emeralds and jewelry incorporating diamonds and/or other gemstones) sold by

defendant Blue Nile via its www.bluenile.com website are purchased by consumers without the consumers' personally viewing the gemstones at any time prior to purchase.

18. On information and belief, the home page of the Blue Nile website includes a link to "Gemstone Jewelry." See Exhibit 7. On information and belief, clicking the "Gemstone Jewelry" link will take the viewer to a webpage entitled "Gemstone Jewelry" and having the URL http://www.bluenile.com/gemstone-jewelry. A printout of the "Gemstone Jewelry" page from the Blue Nile website is annexed hereto as Exhibit 8.

19. On information and belief, the "Gemstone Jewelry" page includes a header, "Learn About Gemstones," which includes links, inter alia to "Enhancements." See Exhibit 8. On information and belief, clicking the "Enhancements" link will take the viewer to a webpage entitled "Enhancements" and having the URL http://www.bluenile.com/gemstone_enhancements.jsp. A printout of the "Enhancements" page from the Blue Nile website is annexed hereto as Exhibit 9.

20. On information and belief, the "Enhancements" page of the Blue Nile website included the following language as of November 12, 2008, when Plaintiffs filed their original Complaint (see Exhibit 9):

> Unpolished gemstones are typically very rough. Looking at gemstones straight from the mine, they might be mistaken for pebbles or gravel.
>
> **Part of the Process**
>
> Almost every colored gemstone you will come across has been heat-treated. It is a common practice around the globe and has been going on for centuries. Heating completes a process nature started, and is used to enhance the colors of a gemstone.

> The jewelry industry recognizes heating as acceptable and expected processes. Heating is part of the standard polishing and finishing process for many gemstone varieties. The heating of gemstones is a practice accepted by the jewelry industry, the American Gem Trade Association (AGTA), and by Blue Nile.
>
> For a more detailed understanding of various enhancement practices, please read the AGTA's explanation of gemstone enhancements.

21. On information and belief, after receiving a courtesy copy of Plaintiffs' original Complaint, as filed, Blue Nile changed the body of the "Enhancements" page of the Blue Nile website, including changing the above-quoted language as follows:

| **Blue Nile "Enhancements" page on November 12, 2008** | **Blue Nile "Enhancements" page on December 8, 2008** |
|---|---|
| Unpolished gemstones are typically very rough. Looking at gemstones straight from the mine, they might be mistaken for pebbles or gravel.<br>**Part of the Process**<br>Almost every colored gemstone you will come across has been heat-treated. It is a common practice around the globe and has been going on for centuries. Heating completes a process nature started, and is used to enhance the colors of a gemstone.<br>The jewelry industry recognizes heating as acceptable and expected processes. Heating is part of the standard polishing and finishing process for many gemstone varieties. The heating of gemstones is a practice accepted by the jewelry industry, the American Gem Trade Association (AGTA), and by Blue Nile.<br>For a more detailed understanding of various enhancement practices, please read the AGTA's explanation of gemstone enhancements. | Unpolished gemstones are typically very rough. Looking at gemstones straight from the mine, they might be mistaken for pebbles or gravel.<br>**Part of the Process**<br>Nearly all gemstones available on the open market have been "enhanced" (i.e. something has been done to make them look better). Gemstones that have not been enhanced are very rare and command extravagant prices.<br>There are many methods of enhancing gemstones. Some of the most common enhancement treatments are described below. For more information on gemstone enhancements, visit the American Gem Trade Association website.<br>**Heat Treatment**<br>The use of heat to enhance the color of some gemstones is a common practice around the globe and has been going on for centuries. It is part of the standard polishing and finishing process for many gemstone varieties, including aquamarine, citrine, amethyst, sapphire, ruby and |

| | |
|---|---|
| | tanzanite, and is accepted by the jewelry industry and the American Gem Trade Association.<br><br>The enhanced color of heat-treated gemstones is permanent and does not require special care. Aquamarine, citrine, amethyst, sapphire, ruby and tanzanite gemstones offered by Blue Nile have been heat treated.<br><br>**Colorless Oil, Wax and Resin**<br><br>Colorless oil, wax and resin are used to improve the clarity of some gemstones. The colorless oil, wax or resin is infused into surface-reaching fissures (called inclusions) to improve the stone's appearance. This process began centuries ago by gemstone merchants who found that immersing emeralds in clear oil or waxes made them look clearer to the unaided eye. Today, almost all emeralds are treated in this way. Gemstones with colorless oil, wax or resin enhancement, including emeralds, can be harmed if handled roughly. Recommended special care for such gemstones is avoidance of sudden temperature changes, steaming, chemicals and ultrasonic exposure.<br><br>Emeralds offered by Blue Nile may have been treated with colorless oil, wax or resin.<br><br>Read Gemstone Care to learn how to ensure your gemstone lasts for a lifetime. |

A printout of the “Enhancements” page from the Blue Nile website as it appeared on December 8, 2008, is annexed hereto as Exhibit 14.

22. On information and belief, when Blue Nile’s web page refers to “Enhancements” or “enhanced” gemstones, it is referring to gemstones, including rubies, emeralds and sapphires, whose clarity has been enhanced.

23. On information and belief, the quoted portion of the "Enhancements" page of the Blue Nile website includes a link to the Internet website of the American Gem Trade Association (AGTA), http://www.agta.org/, which includes a link to a document entitled "The Gemstone Information Manual," at http://www.agta.org/gemstones/agta-gim.pdf. A copy of The AGTA Gemstone Information Manual is annexed hereto at Exhibit 10.

24. The AGTA Gemstone Information Manual includes disclosure requirements for natural gemstones, including the following (emphasis added):

**Federal Trade Commission requirement**:

> [I]t is the seller's responsibility at all levels of commerce to clearly disclose to the buyer at the time of sale:
>
> 1) Whether the gemstone is natural or not;
>
> 2) All information pertinent to any enhancement process done to a natural gemstone when:
>
> a. the treatment is not permanent and its effects are lost over time; or
>
> b. the treatment creates special care requirements for the gemstone to retain the benefit of the treatment;
>
> c. the treatment has a significant effect on the value of the gemstone.
>
> Minimal disclosure information would include whether the gemstone…if natural,[ ] has been treated in any manner where 2 (a) [or] (b)[ ] above apply; in such cases, the nature of the treatment, its permanence and any special care requirements.
>
> As to "significant effect on value," the position of the FTC is that treatment has a significant effect on the value of a gemstone whenever the effect of treatment on value is likely to affect a reasonable buyer's purchasing decision. Such is the case whenever there is a significant (more than

> slight) difference in value between a treated gemstone and an untreated gemstone of the same type, size and appearance… ***Treatment must be disclosed whenever a buyer, without disclosure of treatment, would believe that two seemingly identical gemstones, one treated and one not, are identical or very comparable in value, when in fact, they are not***.
>
> * * *
>
> ***When it is not known with certainty whether or not a gemstone has been treated, but treatment is suspected (as in the case of gemstone types which are known to be routinely treated), the FTC states that, "it is prudent and appropriate to disclose gemstone treatments rather than remain silent when there is a possibility that the stones have been treated."***
>
> ***This minimum disclosure information is required by the FTC. Failure to disclose that a gemstone is not natural, or enhancement information as to a treated natural gemstone in compliance with the FTC Guides, subjects the violator to FTC enforcement action, civil penalties and trade sanctions***.
>
> * * *
>
> [W]here a gemstone or a jewelry product which contains gemstones can be purchased without the buyer personally viewing the product (e.g., catalog sales, catalog showrooms, mail order houses, online services, televised shopping programs or other media sales programs, telephone sales, etc.), disclosure must be made in the solicitation for or description of the product.

**Disclosure methods within the trade**:

> Each material that may require disclosure has been assigned a code consisting of one or more letters indicating the enhancement (or possibility of enhancement) and identifying the pertinent process. Disclosure should be made within the trade on every tag, stone paper, container, invoice, memorandum or other commercial document each time a seller offers for sale or sells a gemstone or jewelry product containing gemstones to a buyer within the trade.

**Consumer disclosure requirements**:

> [W]hen disclosing to retail consumers, all required disclosure must be made in plain language. Codes and/or abbreviations are not sufficient.

**AGTA member requirements**:

> The above requirements are applicable to all sellers at all levels of commerce within the trade. The disclosure requirements of the American Gem Trade Association are more stringent than the FTC minimal requirements, and all AGTA Firm and Affiliate Members are bound by and must disclose in accordance with the AGTA Code of Ethics which is not changed by the revision of the FTC Guides.

(See Exhibit 10 at 102-103)

25. The AGTA Gemstone Information Manual also includes a "Gemstone Information Chart Glossary" of "Symbols for Specific Forms of Enhancements" of gemstones, including:

> O Oiling/Resin Infusion: The filling of surface-breaking fissures with colorless oil, wax, resin or other colorless substances, except glass or plastic, to improve the gemstone's appearance.

(See Exhibit 10 at 105)

26. The AGTA Gemstone Information manual also includes a "Gemstone Information Chart," including the following with respect to emeralds:

| GEMSTONE | TAG CODE | ENHANCEMENT METHOD | FREQUENCY USED | STABILITY | CARE REQUIRED | SPECIAL ADVICE |
|---|---|---|---|---|---|---|
| Diamond, Colored (continued) | H | Use of heat to alter color | Rarely | Unknown | Normal | |
| Diopside (Chrome) | N | None | ---- | ---- | Special | Avoid sudden temperature changes and harsh chemicals |
| Emerald | E or O | The penetration of colorless oil, wax and resins into fissures to improve appearance | Usually | Very Good to Fair | Special | Avoid sudden temperature changes, steaming, chemicals and ultrasonic |
| | D | Dyed with color agents | Occasionally | Variable | Special | Avoid sudden temperature changes, steaming, chemicals and ultrasonic |

(See Exhibit 10, 107-116 at 110)

27. On information and belief, after receiving a courtesy copy of Plaintiff's original Complaint, Blue Nile changed the "Enhancements" page of the Blue Nile website to indicate that the emeralds (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com "may have been treated with colorless oil, wax or resin." (See Exhibit 14)

28. On information and belief, both before and after receiving the courtesy copy of Plaintiff's original Complaint, Blue Nile's website does not disclose for each and every specific gemstone offered for sale whether that gemstone has been subject to clarity treatment/enhancement, or what that clarity treatment/enhancement is.

29. On information and belief, the emeralds (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com are oil filled (including filling by oil, wax, resin or other colorless substances) to enhance their clarity. As used in this Amended Complaint, "oil filling" shall mean and refer to filling by oil, wax, resin or other colorless substance.

30. The Gemological Institute of America ("GIA") has determined that emeralds sold by Blue Nile contain "[m]oderate clarity enhancement." Copies of GIA Emerald Reports concerning Blue Nile emeralds purchased by a third party are annexed hereto as Exhibit 11.

31. On information and belief, emeralds that are sold without clarity enhancing are far more expensive than emeralds that are treated to enhance their clarity, whether by oil filling or another method.

32. On information and belief, prior to the commencement of this action, the only enhancement method disclosed by Blue Nile on its website, with respect to

gemstones (including rubies, sapphires and emeralds), was heating to enhance the color of the gemstone. (See Exhibit 9).

33. On information and belief, defendant Blue Nile did not disclose on its www.bluenile.com website that the emeralds (including in emerald-containing jewelry) offered for sale and sold there by Blue Nile have been clarity enhanced by oil filling, until after Plaintiffs filed their original Complaint in this action.

34. On information and belief, at least as of December 28, 2008, Blue Nile did not disclose on its invoices for emerald-containing jewelry that the emeralds contained therein had been clarity enhanced by oil filling. A copy of a December 28, 2008 invoice from Blue Nile, for “Emerald Stud Earrings in 18K White Gold,” is attached as Exhibit 15.

35. On information and belief, the rubies (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com are oil filled (including filling by oil, wax, resin or other colorless substances) to enhance their clarity.

36. On information and belief, the rubies (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com are filled with glass to enhance their clarity.

37. On information and belief, the rubies (including those in jewelry) that defendant Blue Nile sells via its website are cheap rubies containing numerous fractures prior to having their clarity enhanced via oil filling or otherwise.

38. The GIA has stated that fracture-filling of rubies (i.e., filling with oil or resin) and cavity-filling of rubies (i.e., with glass) are not permanent treatments, saying:

**Stability**

> Heat can cause a change in color or clarity, it can also damage or destroy fracture- and cavity-fillings. Rubies are generally stable to light, but bright lights can cause oil to leak or dry out. Chemicals can harm fillings and remove oil; soldering flux containing boron and firecoat made with boric acid powder, will etch the surface of even untreated stones.

A copy of the GIA Library page on rubies is attached Exhibit 16.

39. The GIA also notes special care/treatment requirements for oil filled/fracture filled and cavity filled/glass filled rubies (see Exhibit 16):

**Treatments**

| Treatment | Purpose | Stability | Prevalence | Detection |
|---|---|---|---|---|
| Heat | Improves color and/or clarity appearance | Stable unless the stone is heated to very high temperatures | Very Common; experts estimate that up to 95% of stones undergo some sort of heat treatment | May be detectable by a trained gemologist of gemological laboratory.* Can be undetectable, but assumed because of prevalence |
| Surface diffusion (heating to very high temperature in the presence of a coloring agent) | Creates a very shallow layer of red color in colorless or light colored sapphire | Stable under normal conditions, but the color layer can be damaged or destroyed if the stone is repolished or recut | Occasional Diffusion-treated red corundum should not be called ruby | Detectable by a trained gemologist or gemological laboratory* |
| Fracture-filling with oil or epoxy resin | Improves clarity appearance by hiding fractures. Colored oil or resin also improves color appearance | Fair. Heat and chemicals can damage or destroy the filling. Oil will probably dry out or discolor in time | Occasional | Detectable by a trained gemologist or gemological laboratory* |
| Cavity-filling with epoxy resin or glass | Improves clarity appearance by hiding cavities; adds weight if the cavities are large | Fair. Heat and chemicals can damage or destroy the filling | Common | Detectable by a trained gemologist or gemological laboratory* |

**Care and Cleaning**
Rubies can be cleaned in warm, soapy water, but avoid strong detergents and vigorous scrubbing on oiled stones. Ultrasonic cleaning and steam cleaning are usually safe, but never for fracture- or cavity-filled stones.

40. On information and belief, defendant Blue Nile does not disclose on its www.bluenile.com website that the rubies (including in ruby-containing jewelry) offered for sale and sold there by Blue Nile have been clarity enhanced by oil filling and/or glass filling.

41. In an attempt to more precisely and fully identify the artificial clarity enhancement methods employed by Blue Nile with respect to the rubies (including those in jewelry) that Blue Nile sells via the website at www.bluenile.com, Yehuda submitted three rubies purchased from the Blue Nile website to the American Gemological Laboratory (AGL) in December 2008, for certification. Copies of the Gem Identification Reports for the three rubies are attached as Exhibits 17 - 19.

42. Each of the Gem Identification Reports for the submitted Blue Nile rubies contains the following language under "Comments":

> Enhancement: Heat… It is the opinion of the Laboratory that this material exhibits evidence of moderate [or, faint to moderate] clarity enhancement: Inorganic (Flux Type)

(See Exhibits 17 - 19)

43. The AGTA website includes (at http://www.agta-gtc.org/flux_healing.htm) an abstracted article, entitled "The ***<u>Synthetic</u>*** Healing of Ruby" (emphasis added), which describes flux healing of rubies. The abstracted article is reproduced below (emphasis original):

> One of the least understood treatments applied to any gemstone is that of the flux healing of rubies. Often mislabeled as, and confused with, "glass-filling," in fact the treatment involves the use of fluxes to "heal" open fractures in ruby. Today, despite the fact that the process has been discussed at dozens of meetings, most jewelers are completely unaware of the treatment method and its impact on a gemstone. The following is designed to shine light into this misunderstood industry corner.




**Figure 1. Anatomy of a healed fracture**

A well-healed fracture in a ruby lying roughly parallel to the basal plane. The healed areas appear dark, while the undigested fluids are highly reflective and white or brightly colored. Note that the pattern of healing relates to the underlying crystal structure, with angles of healed areas following the underlying crystallographic structure (in this case, at 60/120°). Photo © John I. Koivula/microWorld of Gems

**The flux healing process**

> Flux healing involves heating corundums with borax or other fluxes. These fluxes actually dissolve the surfaces, including the internal surfaces of cracks. The corundum within this molten material then redeposits on the fracture surfaces, filling and healing the fractures shut. Undigested material cools into pockets of flux glass. ***Essentially this amounts to a microscopic deposition of synthetic corundum to heal the cracks closed.*** This treatment is applied to virtually all rubies from Burma's Mong Hsu mines, which have produced the lion's share of facet-grade ruby over the past 15 years.




**Figure 2. Diagram of a flux-healed fracture**

The mechanism of flux healing of a fracture in corundum.

**A.** Open fracture/fissure, unhealed.

**B.** During heat treatment, flux enters the fracture and dissolves the walls of the crack.

**C.** During cooling, dissolved corundum recrystallizes in the crack, thus healing it closed. The newly crystallized ruby is essentially a synthetic ruby grown in the crack alone. It contains small pockets of now-solidified flux glass, along with some trapped gas pockets.

For purposes of this diagram, the surrounding natural ruby and the synthetic ruby in the crack are shown in two different colors. In reality, no distinction can be seen between the surrounding ruby and the newly grown synthetic ruby.
**D.** Any flux glass present on the surface can be dissolved away with acid. The synthetic ruby in the crack is unaffected by the acid, as is the ruby as a whole. (Illustration © R.W. Hughes; modified from Hänni, 2001, SSEF)




**Figure 3. Flux-healed fracture**

Moderate magnification reveals a flux-healed fracture in a Mong Hsu ruby from Burma. The irregular dark areas are pockets of residual flux, while the red areas in between are where the once open fracture has healed shut with microscopic amounts of what is essentially synthetic corundum. Photo © R.W. Hughes

In the broadest sense, this is akin to the oiling of emerald – both treatments involve reduction of internal reflections from cracks/fissures. Similar to placing an ice cube in water, a filled fracture is much less visible because the filler replaces air (refractive index = 1.00) with a substance that has a refractive index that more closely matches the gemstone itself (1.76–1.77). However, the flux

healing of Mong Hsu rubies differs in three important respects:

- The Mong Hsu ruby treatment is not a fracture filling, but a permanent healing or regrowth of the fractures and fissures, with any residue merely a remnant of the process. In many respects, it is a welding of fractures, similar to the joining of two pieces of metal with heat and a flux to fuse them together.

- The treatment is permanent and irreversible. Unlike the oil in an oiled emerald, flux remnants will not drain out in the future, nor can they be removed. There is no way to return a gemstone to the untreated state.

- The treatment actually improves a gemstone’s durability, since the fractures are permanently welded shut.

In the past, some have argued that the flux remnants are an accidental byproduct of what amounts to "normal" heating. Nothing could be further from the truth. While Mong Hsu rubies are heated for two different reasons (to remove the blue color and heal the fractures), the flux is used solely to heal fractures. This is why fluxes are generally not used when heating clean gemstones (such as pink sapphires from Madagascar) to remove similar blue overtones.

**Summary**

From the above, it should be clear that the flux-healing treatment is entirely different from both ordinary heat treatments, as well as fracture-filling treatments. If lumped together with simple heat treatment, it will completely redraw the map, not just for ruby, but also potentially for the entire gemstone industry. Treatments such as this underscore the need for widespread educational programs, along with modern laboratories, such as the AGTA GTC.




**Figure 4. Surface view of a flux-healed fracture**

A highly magnified photo showing a single facet's surface in reflected light where a fracture breaks the surface in a flux-healed Mong Hsu ruby. The dotted red line shows the path of what was once an open fracture, displaced slightly to the right so you can see surface detail. The irregular black areas are surface cavities where bubbles in the flux were cut through, while the irregular gray areas are residual flux glass that has been polished. Note the lower luster compared with the surrounding corundum. In between the surface cavities and flux glass are healed areas, indistinguishable from the surrounding corundum. Photo © R.W. Hughes

A copy of the above-article is attached as Exhibit 20. See also, "Ruby: Heat-Treating, Fracture-Filling, and Flux-Healing," which appears at

http://www.khulsey.com/jewelry/gemstones_ruby_enhancements.html (copy attached as Exhibit 21); and “Foreign Affairs: Fracture healing/filling of Möng Hsu ruby,” which appears at http://www.ruby-sapphire.com/foreign-affairs.htm (copy attached as Exhibit 22).

44. Others in the gemstone industry have emphasized the need for disclosing to consumers the fact that a gemstone (including a ruby) has been clarity enhanced (by, inter alia, flux healing). See Exhibit 21, the pertinent portion of which is reproduced below:

**Gem Enhancement Classifications**

It is important for the consumer to be aware of the fact that most other varieties of gemstones on the market today have been treated or "enhanced" in some manner to improve their appearance. The cesignation for identifying enhancements is: "N" (not enhanced), "E" (normally enhanced), and "T" (nontraditional enhancements). Commonly used methods of enhancement are:

- **Bleaching (B):** Used to lighten and/or whiten gemstones or pearls
- **Coating (C):** Surface enhancement by enameling, inking, foiling, lacquering, or sputtering
- **Dyeing (D):** Used to enhance the color and uniformity of gemstones or pearls
- **Filling (F):** Filling surface cavities or fissures with colorless glass, plastic or resin
- **Flux healing (FH):** Heat enhancement used to heal fissures and fractures
- **Fracture Filling (F):** Injecting plastics or glass into fractures
- **Heat Treatment (H):** Used to lighten, darken, or alter color
- **Impregnation (I):** Treating gems with oil, wax, or resin to improve clarity & appearance
- **Irradiation (R):** Used to add color intensity to diamonds, gemstones, or pearls
- **Lattice Diffusion (U):** High-temperature heat treatment to produce color and/or asterism
- **Lasering (L)** Laser and chemical treatment to remove inclusions
- **Waxing (W):** Impregnation with colorless wax, paraffin or oil

Consumers should require that they be informed of such alterations or enhancements before they make a purchase. This is especially important if the enhancement to the treated stone is not permanent or if the treated stone will require special care.

45. On information and belief, rubies that have been subjected to flux healing contain synthetic ruby and glass. (See Exhibit 20).

46. On information and belief, the rubies (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com are subjected to a flux healing process to enhance their clarity. (See Exhibits 17 - 19) As a result, on information and belief, the rubies sold and/or offered for sale by Blue Nile via its website contain synthetic ruby and glass.

47. On information and belief, defendant Blue Nile does not disclose on its www.bluenile.com website, or elsewhere that the rubies (including in ruby-containing jewelry) offered for sale and sold there by Blue Nile have been clarity enhanced by flux healing.

48. On information and belief, at least as of December 10, 2008, Blue Nile did not disclose on its invoices for ruby-containing jewelry that the rubies contained therein had been clarity enhanced by flux healing. Copies of a December 8, 2008 invoice from Blue Nile, for "Ruby Stud Earrings in 18K White Gold," and of a December 10, 2008 invoice from Blue Nile, for "Oval Ruby Pendant in 18K White Gold (7x5mm)" are attached as Exhibits 23 and 24, respectively.

49. On information and belief, at least as of December 10, 2008, Blue Nile did not disclose on its appraisals for ruby-containing jewelry that the rubies contained therein had been clarity enhanced by flux healing. A copy of a December 10, 2008 appraisal from Blue Nile, for "One lady's eighteen karat white gold (stamped) and ruby pendant with neck chain" is attached as Exhibit 25, respectively.

50. On information and belief, defendant Blue Nile does not disclose on its www.bluenile.com website, or elsewhere that the flux-healed rubies (including in ruby-containing jewelry) offered for sale and sold there by Blue Nile contain synthetic ruby and glass.

51. On information and belief, the sapphires (including those in jewelry) that defendant Blue Nile sells via the website at www.bluenile.com are oil filled (including filling by oil, wax, resin or other colorless substances) to enhance their clarity.

52. On information and belief, defendant Blue Nile does not disclose on its www.bluenile.com website that the sapphires (including in sapphire-containing jewelry) offered for sale and sold there by Blue Nile have been clarity enhanced by oil filling.

53. On information and belief, oil filling and glass filling of gemstones, including rubies, sapphires and emeralds, are not permanent processes.

54. On information and belief, defendant Blue Nile did not disclose on its www.bluenile.com website that the oil filling process it employs to enhance the clarity of the gemstones (including rubies, sapphires and emeralds) and gemstone-containing jewelry it offers for sale and sells via the website, is not a permanent process, until after Plaintiffs filed their original Complaint.

55. On information and belief, as of the date of Plaintiff's original Complaint, the "Gemstone Care" page of the Blue Nile website did not disclose that special care is required for the oil-filled and glass-filled gemstones (including rubies, sapphires and emeralds) and gemstone-containing jewelry offered for sale and sold via the website, including avoiding sudden temperature changes, steaming and chemicals. A printout of

the “Gemstone Care” page of the Blue Nile website as it appeared on November 5, 2008 is annexed hereto as Exhibit 12.

56. On information and belief, even after Plaintiffs filed their original Complaint, the “Gemstone Care” page of the Blue Nile website does not disclose that special care is required for the oil-filled and glass-filled gemstones (including rubies, sapphires and emeralds) and gemstone-containing jewelry offered for sale and sold via the website, including avoiding sudden temperature changes, steaming and chemicals. A printout of the “Gemstone Care” page of the Blue Nile website as it appeared on December 8, 2008 is annexed hereto as Exhibit 26.

57. On information and belief, Blue Nile’s “Jewelry Care Guide,” with respect to “Gemstone Care,” does not disclose that special care is required for the oil-filled and glass-filled gemstones (including rubies, sapphires and emeralds) and jewelry containing oil-filled and glass-filled gemstones offered for sale and sold via the Blue Nile website, including avoiding sudden temperature changes, steaming and ultrasonic. A copy of the relevant portion of Blue Nile’s “Jewelry Care Guide” is annexed hereto as Exhibit 13.

58. On information and belief, Blue Nile’s “Jewelry Care Guide” also does not disclose that oil-filled and glass-filled gemstones (including rubies, sapphires and emeralds) cannot be cleaned using most jewelry cleaners, and that any repair requires special care be taken with respect to the gemstone (including in gemstone-containing jewelry).

59. On information and belief, Blue Nile deliberately, willfully and intentionally withheld and withholds from consumers visiting the Blue Nile website to purchase gemstones, specifically rubies, sapphires and emeralds and ruby-, sapphire- and

emerald-containing jewelry (including but not limited to John Does), the fact that the clarity of Blue Nile's rubies, sapphires and emeralds (including loose rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry) is enhanced by oil filling and/or glass filling.

60. On information and belief, Blue Nile deliberately, willfully and intentionally withheld and withholds from consumers visiting the Blue Nile website to purchase gemstones, specifically rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry (including but not limited to John Does), that oil filling and glass filling are not permanent processes.

61. On information and belief, Blue Nile deliberately, willfully and intentionally withheld and withholds from consumers visiting the Blue Nile website to purchase gemstones, specifically rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry (including but not limited to John Does), that the oil-filled and glass-filled rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry available for purchase from the Blue Nile website have special care requirements, including without limitation that the rubies, sapphires and emeralds cannot be cleaned using most jewelry cleaners, and that any repair requires special care be taken with respect to the ruby, sapphire or emerald.

62. On information and belief, Blue Nile deliberately, willfully and intentionally withheld and withholds from consumers visiting the Blue Nile website to purchase gemstones, specifically rubies and ruby-containing jewelry (including but not limited to John Does), that the rubies (including in ruby-containing jewelry) offered for

sale and sold there by Blue Nile have been enhanced by flux healing, and therefore contain synthetic ruby and glass.

63. On information and belief, Blue Nile deliberately, willfully and intentionally withheld and withholds from consumers visiting the Blue Nile website to purchase gemstones, specifically rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry (including but not limited to John Does), that enhancing the clarity of a gemstone by oil filling, glass filling, flux healing or otherwise, significantly affects the value of the clarity-enhanced gemstone, vis a vis natural, non-enhanced stones.

64. On information and belief, whether a gemstone, including a ruby, sapphire or emerald, has been clarity enhanced by oil filling or glass filling, whether the oil filling or glass filling process is permanent, and whether the oil filling process results in special care requirements for the treated ruby, sapphire or emerald, all are material to a consumer's decision to purchase a gemstone or gemstone-containing jewelry.

65. On information and belief, whether a ruby has been clarity enhanced by flux healing, and thus whether a ruby contains synthetic ruby and glass, is material to a consumer's decision to purchase a ruby or ruby-containing jewelry.

66. On information and belief, whether clarity enhancement of a gemstone, including a ruby, sapphire or emerald, by oil filling or glass filling or flux healing, or otherwise, significantly affects the value of the clarity-enhanced gemstone, vis a vis natural, non-enhanced stones, is material to a consumer's decision to purchase a gemstone or gemstone-containing jewelry.

67. On information and belief, consumers (including but not limited to John Does) have been deceived and are likely to be deceived by Blue Nile's deliberate, willful and intentional withholding of material information concerning the oil filling or glass filling clarity enhancement of the rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry it offers for sale and sells via the www.bluenile.com website, including the fact that the oil filling and glass filling clarity enhancement is not permanent and results in special care requirements for the clarity enhanced rubies, sapphires and emeralds.

68. On information and belief, consumers (including but not limited to John Does) have been deceived and are likely to be deceived by Blue Nile's deliberate, willful and intentional withholding of material information concerning the flux healing of the rubies and ruby-containing jewelry it offers for sale and sells via the www.bluenile.com website, including the fact that the flux healing results in the ruby containing synthetic ruby and glass.

69. On information and belief, consumers (including but not limited to John Does) have been deceived and are likely to be deceived by Blue Nile's deliberate, willful and intentional withholding of material information concerning the fact that clarity enhancement of a gemstone, including a ruby, sapphire or emerald, by oil filling or glass filling or flux healing, or otherwise, significantly affects the value of the clarity-enhanced gemstone, vis a vis natural, non-enhanced stones.

**COUNT I**
**FALSE ADVERTISING**
**15 U.S.C. § 1125(a)**

70. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-69 of this Complaint, as though fully set forth herein.

71. This claim arises under the Lanham Act, 15 U.S.C. § 1051 et seq.

72. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

73. On the basis of the foregoing paragraphs, defendant Blue Nile has, in connection with goods or services, used a false or misleading description of fact, or a false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and/or qualities of Blue Nile's goods or services. Specifically, Blue Nile's intentional and deliberate withholding of the fact that the rubies, sapphires and emeralds and ruby-, sapphire- and emerald-containing jewelry that Blue Nile offers for sale and sells via its website are enhanced by oil filling, which is not a permanent process, and which imposes special care requirements on the rubies, sapphires and emeralds, misrepresents the nature, characteristics and/or qualities of those gemstones.

74. On the basis of the foregoing paragraphs, defendant Blue Nile has, in connection with goods or services, used a false or misleading description of fact, or a false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and/or qualities of Blue Nile's goods or services. Specifically, Blue Nile's intentional and deliberate withholding of the fact that the rubies and ruby-containing jewelry that Blue Nile offers for sale and sells via its website are enhanced by flux healing, which results in the rubies containing synthetic ruby and glass, misrepresents the nature, characteristics and/or qualities of those rubies.

75. Defendant Blue Nile's statements have actually deceived or have the tendency to deceive a substantial segment of its audience.

76. Defendant Blue Nile's deception is material and is likely to influence the purchasing decisions of gemstone customers, including diamond customers.

77. Defendant Blue Nile's false and misleading statements and representations were and are made in interstate commerce.

78. Defendant Blue Nile's improper activities, as described above, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act.

79. As a result of defendant Blue Nile's improper activities, Plaintiffs have suffered and continue to suffer substantial injury, including irreparable injury and damages, including but not limited to loss of sales and profits to Yehuda which Yehuda would have made but for the false and deceptive advertising by Blue Nile, unless Blue Nile is preliminarily and/or permanently enjoined by this Court.

**COUNT II**
**UNFAIR AND DECEPTIVE BUSINESS PRACTICES**
**N.Y. GEN. BUS. L. § 349**

80. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-79 of this Complaint, as though fully set forth herein.

81. This claim arises under the laws of the State of New York.

82. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

83. On the basis of the foregoing, defendant Blue Nile has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material

way, constituting unfair and deceptive business practices in violation of § 349 of the N.Y. General Business Law.

84. Defendant Blue Nile's false, misleading and deceptive statements and representations of fact were and are directed to consumers.

85. Defendant Blue Nile's false, misleading and deceptive statements of fact are likely to mislead a reasonable consumer acting reasonably under the circumstances.

86. Defendant Blue Nile's false, misleading and deceptive statements of fact have resulted or are likely to result in consumer injury or harm to the public interest.

87. As a result of defendant Blue Nile's unfair and deceptive business practices, Plaintiffs have suffered and continue to suffer substantial injury, including irreparable injury and damages, including but not limited to loss of sales and profits to Yehuda which Yehuda would have made but for the false and deceptive advertising by Blue Nile, unless Blue Nile is preliminarily and/or permanently enjoined by this Court.

**COUNT III**
**FALSE ADVERTISING**
**N.Y. GEN. BUS. L. § 350**

88. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-87 of this Complaint, as though fully set forth herein.

89. This claim arises under the laws of the State of New York.

90. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

91. On the basis of the foregoing, defendant Blue Nile has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material

way, constituting false advertising in the conduct of any business, trade or commerce, in violation of § 350 of the N.Y. General Business Law.

92. As a result of defendant Blue Nile's false advertising, Plaintiffs have suffered and continue to suffer substantial injury, including irreparable injury and damages, including but not limited to loss of sales and profits to Yehuda which Yehuda would have made but for the false and deceptive advertising by Blue Nile, unless Blue Nile is preliminarily and/or permanently enjoined by this Court.

## JURY TRIAL DEMAND

93. Pursuant to Rule 38, Fed. R. Civ. P. Plaintiffs hereby demand a trial by jury on all issues set forth herein that a properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Yehuda and John Does respectfully request that the Court, upon final hearing of this matter, grant the following relief against defendant Blue Nile:

1. That Blue Nile, its agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily and permanently:

(a) From making false and misleading statements and representations concerning the nature of the clarity enhancement of the rubies, sapphires and/or emeralds (including those included in jewelry) offered for sale

and/or sold by Blue Nile via its Internet website, including statements and representations concerning the permanence (or lack thereof) of the clarity enhancement treatment and the special care required as a result of the treatment;

(b) To notify Blue Nile's customers and the gemstone industry generally of the precise nature of the process(es) used by Blue Nile to enhance the clarity of its rubies, sapphires and emeralds (including those contained in jewelry);

(c) To disseminate appropriate and effective corrective advertising and promotional materials to Blue Nile's customer base, including but not limited to, on the homepage of the www.bluenile.com website, to correct Blue Nile's false, misleading and deceptive representations;

(d) To notify each and every customer who purchased rubies, sapphires or emeralds or ruby-, sapphire- or emerald-containing jewelry from Blue Nile's website, www.bluenile.com, that the purchased rubies, sapphires or emeralds or jewelry had been treated by oil filling (including filling by oil, wax, resin or other colorless substances), glass filling or flux-healing to enhance their clarity, offering such customers the opportunity to return the purchased rubies, sapphires or emeralds or ruby-, sapphire- or emerald-containing jewelry for a full and complete refund;

2. An award of damages sustained by Yehuda pursuant to 15 U.S.C. § 1117(a)(2), N.Y. Gen. Bus. L. §§ 349 and 350, and as otherwise permitted by law;

3. An accounting and award of profits derived by Blue Nile from its unlawful conduct pursuant to 15 U.S.C. § 1117(a)(1), and as otherwise permitted by law;

4. An award of Yehuda's costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a)(3), and as otherwise permitted by law;

5. An award of prejudgment and post-judgment interest; and

6. An award to Plaintiffs of any other relief, in law and in equity, to which the Court finds Plaintiffs justly entitled.

Dated: 1/14/09

Respectfully submitted,

PEARL COHEN ZEDEK LATZER LLP

By: ______________________

Lee A. Goldberg (LG-9423)
LeeG@pczlaw.com
Clyde A. Shuman (CS-6351)
ClydeS@pczlaw.com
1500 Broadway, 12th Floor
New York, NY 10036
Tel: (646)878-0800
Fax: (646)878-0801

Attorneys for Plaintiffs Diascience Corp. dba Yehuda Diamond Company and John Does Nos. 1-10.

✎AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

DIASCIENCE, INC. dba YEHUDA DIAMOND COMPANY and JOHN DOES NOS. 1-10

V.

BLUE NILE, INC.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

TO: (Name and address of Defendant)

General Counsel,
BLUE NILE, INC.
705 Fifth Avenue South, Suite 900
Seattle, Washington 98104

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PEARL COHEN ZEDEK LATZER LLP
Lee A. Goldberg (LG-9423)
Clyde A. Shuman, Esq.
1500 Broadway, 12th Floor
New York, NY 10036

an answer to the complaint which is served on you with this summons, within twenty (20) days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

✎AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | $0.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ______________________ ______________________________________
Date *Signature of Server*

______________________________________
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Print | Save As... | Export as FDF | Retrieve FDF File | Reset